### In re SAVARESE.

### Appeal of STATE BANK.

#### (Circuit Court of Appeals, Second Circuit. December 9, 1913.)

#### No. 60.

1. BANKRUPTCY (§ 407*)—DISCHARGE—OBJECTIONS—"CREDIT."

Where a bank loaned money to the bankrupt on certain warehouse receipts as collateral, but only after a false financial statement had been presented, and it appears that the loan would not have been made without such statement, the loan was a credit within Bankr. Act July 1, 1898, c. 541, § 14 (3), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1496), providing that a discharge shall not be granted if the bankrupt has obtained money or property on credit upon a materially false statement in writing made by him to any person or his representative to obtain credit from such person.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*

For other definitions, see Words and Phrases, vol. 2, pp. 1711–1713; vol. 8, p. 7622.]

2. BANKRUPTCY (§ 407*) — DISCHARGE — OBJECTIONS — OBTAINING CREDIT — FALSE FINANCIAL STATEMENT.

Where a bankrupt knew that a financial statement was being prepared by his bookkeeper to be used as the basis of credit from a bank, as he was authorized to do, and copies of the statement, which was materially false with reference to matters concerning which the bankrupt was entirely familiar were called to his attention, though he testified that he left such work to the bookkeeper and other office clerks and relied implicitly on them, and thought the statement was correct such testimony was untrue, or he was recklessly negligent; and he, being bound by the acts of the bookkeeper in preparing and submitting such statement, was therefore not entitled to a discharge under Bankr. Act July 1, 1898, c. 541, § 14 (3), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1496), providing that a bankrupt shall not be entitled to a discharge if he has obtained money on credit on a materially false statement in writing to the person from whom such credit is obtained.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Eastern District of New York; Van Vechten Veeder, Judge.

In the matter of the bankruptcy proceedings of Ferdinando Savarese, individually and as surviving partner of the firm of V. Savarese & Bro. An order having been entered overruling the specifications of objection to the discharge of the bankrupt filed by the State Bank, it appeals. Reversed.

W. T. Kohn, of New York City, for appellant.

Isadore Finkler, of New York City (Joseph M. Herzberg, of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. This is the appeal of an objecting creditor from an order granting the bankrupt a discharge.

Ferdinando Savarese, as surviving partner of the firm of V. Savarese & Bro., having been adjudicated a bankrupt, applied for his discharge. The State Bank filed specifications of objection, only one of which need be considered.

"Third.—Upon information and belief that the said bankrupt has wrongfully, fraudulently, and knowingly and willfully obtained money and property from the State Bank and others of his creditors, on credit, upon materially false statements in writing, which statements were made to such creditors for the purpose of obtaining such money and property on credit."

This objection is founded on section 14 (3) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1911, p. 1496]) which provides that a discharge shall not be granted if the bankrupt has—

"obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person."

No exception is taken to the right of the State Bank to file specifications of objection, so that question is not before us for consideration.

Vincenzo Savarese, one of the partners, died some years before, and his interest in the firm was never settled up. His wife was administratrix of his estate, and his son Salvatore was a clerk in the employment of the firm on a weekly salary, and so remained down to the time of the adjudication. At that time he was about 22 years of age, while the bankrupt was 60 years of age, and had been in the business 40 years. The testimony is that Salvatore's very responsible duties were principally in the office, while Ferdinando's principal activities were outside, buying and selling.

[1] July 16, 1909, Salvatore presented a written, but unsigned, statement of the firm's condition as of December 31, 1908, to the State Bank, and on July 27, 1909, the bank advanced the firm $10,000 against warehouse receipts for oil and cheese. We think the statement was made for the purpose of obtaining credit from the bank, and that the bank relied upon it in making the advance of $10,000 to the firm. It is objected that this advance was not upon credit, because the bank

received the warehouse receipts as collateral. But the act does not say that the credit must be obtained solely on the written statement. We think it enough that the advance would not have been made without the statement. So treated, the loan was a credit within the meaning of the act.

[2] The statement was false in various particulars. It included premises 95 First Place, at a value of $7,500, and 115 First Place, at a value of $7,000. Neither of these premises was firm assets. The first belonged to the estate of Vincenzo Savarese, and the second to Ferdinando Savarese, who conveyed it to his wife in March, 1909. Moreover, the premises were included at full value, without deducting a mortgage of $5,000 on 95 First Place and of $5,500 on 115 First Place. An expert who examined the firm's books testified that the amount of notes payable was $74,367.82 instead of $50,302.36, and of accounts payable $51,383.80 instead of $34,590.78, as set out in the statement. In addition he found accounts payable to the amount of $5,397.84 which were not on the ledger at all.

October 20, 1909, Salvatore Savarese presented a statement of the firm's affairs as of the same date (December 31, 1908) to one Dockendorff as a preliminary to an arrangement whereby all the firm's accounts receivable were to be assigned to him against advances of 75 per cent. of their face. This statement made the accounts receivable $10,000 less, and the liabilities $17,000 greater, than did the statement submitted to the State Bank. It furthermore appeared that a separate ledger known as the fake ledger was kept of accounts receivable assigned to Dockendorff, many of which, as we understand it, were fictitious, though the evidence upon this point is meager.

No question is made but what these fraudulent acts and practices would bar the bankrupt's right to a discharge if he knew of them. He admits that he knew Salvatore prepared such statements, was authorized to do so, and that copies were kept which he saw. As matter of law, these acts of Salvatore were his, but as matter of morals, he says he thought the statements correct, and that, his duties being outside the office, he relied implicitly on Salvatore, the bookkeeper and other office clerks, who were acting in the premises. The special commissioner was so favorably impressed by the appearance and manner of Ferdinando Savarese in testifying that he believed him. The district judge, with hesitation, confirmed the report.

Giving great weight, as we should, to these conclusions, we are still unable to believe that Ferdinando Savarese was without knowledge in the premises. He had been 40 years in the business, and was entirely familiar with the amount and value of goods on hand. He could hardly have overlooked the fact that his First Place premises were included in the statement as firm assets, and were grossly overvalued. At the least, he was recklessly negligent. If such accounts as his are to be adopted, it will be made very easy for embarrassed merchants to close their eyes to fraudulent acts of their servants by which they profit, and then, if bankruptcy ensues, obtain the discharge which is intended to enable the merely unfortunate debtors to start life anew.

The order is reversed.