## In re SIMON.

(District Court, D. Massachusetts. December 1, 1920.)

### No. 23777.

1. **Bankruptcy** ⊕⇒409(2)—**Discharge denied for concealing books of account.**
   A bankrupt, who had been found guilty of fraud in transferring the assets of a corporation controlled by him, *held* to have fraudulently concealed his personal books of account, where there are no records regarding the disposition of many thousands of dollars, and a discharge in bankruptcy should be denied him.

2. **Bankruptcy** ⊕⇒407(5)—**Discharge refused for obtaining credit on false statement; "invested."**
   A bankrupt's statement that he had a certain amount invested is a statement of fact, not of estimated value, and his discharge from bank-

---
⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ruptcy should be refused, where he obtained credit by falsely making such a statement.

3. Bankruptcy ⟪=407(1)—Bankrupt's acquittal on one charge does not preclude refusing discharge on other specifications.

A bankrupt's acquittal on the charge of fraudulently concealing his assets does not preclude refusing him a discharge from bankruptcy on the specifications that he had concealed his books of account and had obtained credit by false statements.

4. Bankruptcy ⟪=413(3)—Specifications of objections to bankrupt's discharge held sufficient.

Specifications of objections to a bankrupt's discharge are sufficient, if they fairly apprise him of the objections made to his discharge, at least where the sufficiency of the specifications was not challenged in time to permit amendments to it.

5. Bankruptcy ⟪=413(½)—Creditor's objections to discharge not disfavored.

The law has gone far enough in making difficult objections by creditors to the discharge of a bankrupt.

In Bankruptcy. In the matter of Isaac Simon, bankrupt. Petition for discharge denied.

William H. Garland, of Boston, Mass., for bankrupt.
William Hirsh, of Boston, Mass., for objecting creditor.

MORTON, District Judge. The bankrupt owned all but one share of the capital stock of the Simon Manufacturing Company, and was its president and treasurer. In the fall of 1915 this corporation transferred all its assets to the Simon Coat Company without consideration. The transactions between these two corporations, as stated in the opinion of the Supreme Judicial Court (233 Mass. 85, 123 N. E. 340), were grossly fraudulent, and were entered into for the purpose of hindering and defrauding creditors. As the bankrupt was the virtual owner and the manager of the Manufacturing Company, he must have actively participated in the fraudulent scheme by which he was the person to be chiefly benefited. His individual business interests were closely interrelated with those of the two corporations. It is with reference to these basic facts that the specifications of objection to his discharge are to be considered.

[1] As to the alleged concealment of personal books of account: During 1914 and 1915 the bankrupt was taking on the average about one mortgage a month, some of them for very substantial sums. His bank deposits and withdrawals amounted to about $6,000 per month. He received during this period about $30,000 for fire insurance, which had been paid to the Simon Manufacturing Company and taken by him, besides large sums from other sources. For many thousand dollars the returned checks are missing, and no books or papers are produced to show what became of it.

It is obvious that transactions of such kind and magnitude must have been entered on books and evidenced by various papers; and the bankrupt testified that he had various personal books, papers, and data relating to them, which for the most part have disappeared. Some of them, according to the bankrupt, were turned over by him to one

or another of the lawyers connected with the case; but they were not produced or otherwise accounted for.

As the learned referee saw the witness, his finding in favor of his honesty and credibility is entitled to much weight. But the present question is whether, giving this finding the weight to which it is entitled, the court is satisfied that there has been a concealment of books of account for the purpose of concealing financial condition. On the findings of the Massachusetts court, the bankrupt had the will to cheat creditors of his company and intelligence enough to make careful plans to that end; and on the testimony now before the court it is altogether probable that he concealed or destroyed the company's books of account in order to hinder successful investigation of its affairs. These facts go far to discredit his assertions of good faith; it is likely that he would resort to similar methods in his personal affairs which were interwoven with those of the corporation. His testimony as it appears in the transcript impresses me as that of a decidedly untrustworthy witness. The absence of personal books and papers has made it impossible to trace what became of large amounts of cash received by the bankrupt. I am unable to believe that this result is accidental. I have no doubt that the lack of all data about personal transactions, aggregating many thousand dollars, was intentional, and was brought about by the bankrupt for the purpose of concealing what had been done. The specification based on concealment of books of account is sustained.

[2] As to the alleged false statement to obtain credit: In my opinion, the written statement: "We have $75,000 invested in this property, of which I am an equal owner. I have $37,500 invested"—which was signed by the bankrupt and given by him to the Massachusetts Trust Company, was a statement of facts, not an estimate of value, as the learned referee held. To say "I have invested" a certain amount signifies that I have put that amount of money or the equivalent of money into the property in question. It seems to me quite different from saying, "I value the property" at such a figure, which is the construction put upon it by the learned referee. The bankrupt's assertions of an honest intent, made in the shape of affirmative answers to very leading questions of his counsel, are, under the circumstances, insufficient to outweigh the natural inferences from the facts shown.

The evidence that the trust company relied on the statement in extending credit to the bankrupt is not very explicit. It appears, however, that within a few days after receiving the statement the trust company entered into a course of dealing with the bankrupt which involved loans to him from time to time, and at the time of the failure was his creditor on unsecured loans amounting to about $10,000. The statement in question was evidently made in connection with this business. Taking all the evidence, I think it sufficiently appears that credit was obtained by means of the statement. On this ground, also, the discharge must be refused.

[3] The bankrupt was indicted jointly with Goldman by the federal grand jury for fraudulent concealment of assets, and upon his trial was acquitted by direction of the court; but the result of those pro-

ceedings has no bearing on the specifications of objection which have been discussed.

[4, 5] If formal insufficiency of the specifications was relied on, the point should have been seasonably urged, so that amendments might be made if necessary. The law has gone far enough, I think, in making difficult opposition to the discharge of bankrupts. A creditor who goes to the trouble and expense of filing and prosecuting objections to discharge undertakes what is usually an unprofitable and often a thankless job. But he does something which in fraudulent cases is decidedly in the public interest. Specifications of objection are sufficient, if they fairly apprise the bankrupt of the nature and grounds of the objection which is being made to his discharge.

Petition for discharge denied.