**In re KELLERMAN et al.**

**No. 48008.**

District Court, S. D. New York.

Oct. 25, 1932.

Yankauer, Davidson & Mann, of New York City, for Irving Trust Co., trustee.

Harry Moskowitz, of New York City (Louis M. Weber, of New York City, of counsel), for bankrupts.

PATTERSON, District Judge.

The trustee opposed the bankrupts' application for discharge. The first ground was that they had failed to explain satisfactorily their losses; the second was that they had obtained credit by making a false financial statement. A third ground originally insisted upon has been withdrawn. The special master who took proof on the issues has reported in favor of the bankrupts, recommending that a discharge be granted to them. As I am of opinion that the evidence clearly establishes the issuance of a false financial statement and credit obtained as a result of the statement, it is unnecessary to decide whether the other specification, failure to account for losses, has likewise been proved. The bankrupts were partners in furs and skins under the name of Kellerman & Kellerman. An involuntary petition in bankruptcy was filed against them in December, 1929. In February, 1929, they had sent to the American Fur Merchants' Association a written statement signed by David Kellerman, purporting to show their financial condition on February 2, 1929. This statement showed assets of $27,319.29 against liabilities of $8,150.76, or a net worth of $19,168.53. Without regard to an omitted asset of $2,-926.50 in the form of goods purchased against which there was an obligation for the purchase price in the same amount which was also omitted, the statement was wrong in that it failed to include several liabilities totaling $8,341.43. The first of these omitted liabilities was a note by the firm in favor of one Chaplinsky for $2,249.23, which had been issued in December, 1928. The second was a debt of $3,577 to Phelps Stein & Co., represented by two notes of the firm. The third was a debt of $2,000 to the Gibraltar Credit Union, in the form of a note made by David Kellerman and indorsed by Morris Kellerman. The money borrowed on this note was put into the business and was later, after the issuance of the financial statement, repaid by the two partners in equal amounts. There were two smaller obligations totaling $450 which were similarly omitted. It is thus apparent, and indeed it is not disputed, that instead of owing only $8,150.76 on February 2, 1929, the firm actually owed over double that amount, $16,492.19, and that instead of an indicated net worth of $19,168.-53, the real net worth was only $10,892.30. The trustee further showed that at least two creditors, Alex. Bernstein & Co., Inc., and J. D. Williams, Inc., extended credit in substantial amounts on the faith of the financial statement.

The bankrupts' contention is that the omission of these liabilities from the statement was an innocent error on their part. They offered evidence tending to prove that they employed no regular bookkeeper, that an accountant would come in once a week to write up the books, that they themselves were not familiar with the books, and that the financial statement was prepared by the accountant. As for the Chaplinsky note for $2,249.23, it is said that David Kellerman, who handled the matter and put the cash proceeds of the loan into the firm's bank account in December, 1928, went on the road immediately thereafter and was away for some weeks; that the accountant in entering on the books the receipt of the $2,249.23, by

mistake and through ignorance credited this sum to the capital account of David Kellerman; that the mistake was not discovered until some months later when the note was paid. As for the Phelps Stein notes for $3,577, given in December, 1928, in payment for merchandise, it is testified to that the bill or memorandum for them was lost at the time, that no entry as to this debt was made on the books until April, 1929, when the notes were presented for payment, and that consequently their existence was not known to the accountant when he prepared the financial statement. The omission of the Gibraltar Credit Union item for $2,000 is put upon the ground that it was regarded as a personal loan to David Kellerman and a contribution by him to the firm capital; and it is said that the repayment of one-half the loan by Morris Kellerman was in consideration of a promise by David to make reimbursement at the end of the year.

I cannot accept these excuses. The bankrupts were experienced business men. David Kellerman at least was an intelligent man, familiar with business methods and financial matters, as a reading of his testimony will show. It is simply inconceivable that when the accountant presented him with a draft of a financial statement showing debts of only $8,150.76, he did not know that the real indebtedness must be in the neighborhood of twice that figure. To be aware of this fact he did not need to know bookkeeping details; a general knowledge of the business that was being conducted must have indicated to him beyond any doubt that such a statement was wholly out of line with the true conditions, and that if the statement reflected the books, the books were wrong. In this case the liabilities omitted were greater than the liabilities listed. The conclusion is inevitable that the statement was false to the knowledge of the bankrupts. At the very least, it was a statement made "with reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct" (Morimura, Arai & Co. v. Taback, 279 U. S. 24, 33, 49 S. Ct. 212, 215, 73 L. Ed. 586), and this is sufficient to bar a discharge. If merchants who omit from their financial statements large liabilities owing by them, and who thereby procure credit, may nevertheless win a discharge in bankruptcy by blaming the accountant or by testifying that they forgot about the liabilities or that they considered them individual liabilities although incurred for the benefit of the business, the statute might better be repealed.

So far as I know, the cases where similar facts have been presented are all to the effect that no discharge will be granted. In re Savarese (C. C. A.) 209 F. 830; In re Maaget (D. C.) 245 F. 804; Swift & Co. v. Fortune (C. C. A.) 287 F. 491; Woolen Corporation of America v. Gitnig (C. C. A.) 33 F.(2d) 259; In re Fineberg (D. C.) 36 F.(2d) 392.

I am sensible of the weight to be attached to the conclusions reached by the learned special master, but I am unable to concur in them. See In re Savarese, supra; Swift & Co. v. Fortune, supra.

An order may be entered sustaining the specification as to the false financial statement and denying discharge.