## In re MAGNESS BROS. et al.

District Court, W. D. Arkansas, Harrison Division.

Jan. 15, 1934.

J. M. Shinn and J. Lloyd Shouse, both of Harrison, Ark., for bankrupts.

Moore, Gray & Burrow, of Little Rock, Ark., and Farrington & Curtis, of Springfield, Mo., for objecting creditors.

RAGON, District Judge.

In December, 1931, upon the involuntary petition filed by McGregor Hardware Company of Springfield, Missouri and other interested creditors, the above named individuals and partnerships were adjudicated bankrupts, both as individuals and as partners, and in due time filed their schedules, setting forth their assets and liabilities as required by law.

The present hearing is upon the petition filed by the above-named parties for a discharge. The case was heard on October 9, 1933, at Harrison, on oral testimony, records, and testimony in the bankruptcy court, which was put in the record in this court by agreement between the bankrupts and the objectors to the discharge.

The protestants against the discharge base their objections upon the following grounds:

First, that the bankrupts did not keep a correct and accurate set of books as required by the bankruptcy statute; and,

Second, that they obtained credit and extension of credit upon false statements made for the purpose of obtaining such credits.

These objections are based upon section 14b of the Bankruptcy Law of 1898, as amended by Act of May 27, 1926, as found in United States Code Annotated, title 11, § 32. Section 32 (b) reads as follows:

"The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest, at such time as will give the trustee or parties in interest a reasonable opportunity to be fully heard; and investigate the merits of the application and discharge the applicant, unless he has * * *

"(2) destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case; or

"(3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing, or causing to be made or published, in any manner whatsoever, a materially false statement in writing respecting his financial condition."

The facts connected with the failure of the bankrupts to keep books disclosed that the firm of Magness Brothers was a continuation by the Magness family of a mercantile concern which had been in existence for over fifty years in a small rural town. Some of the bankrupts were interested in mercantile partnerships at various other small towns and villages in the vicinity of Western Grove. The mercantile concerns in which the bankrupts were interested had books kept showing their commercial accounts which were fairly accurate. The specifications of objections carry complaints against the bankrupts for failing to keep account of their note indebtedness. The note indebtedness of Magness Brothers at the time of the adjudication amounted to $127,000, while their store accounts amounted to five or six thousand. However, from the testimony it appears that the greatest volume of business transacted by the bankrupts was had through these mercantile establishments. There is nothing in the evidence to show that their accounts were kept any different for the last two or three years of their existence than they had been before. The schedule discloses that the note indebtedness due the individual bankrupts while containing large items, with the exception of H. R. Magness, the number of the notes held against each was not unusually large. Troy Magness' note indebtedness contained only four items, while Bert M. Magness' note indebtedness is covered in seven items and Ott Magness in eight items. The note indebtedness of H. R. Magness discloses that most of the note indebtedness of twenty-six items were notes due local parties.

■ The method used by the bankrupts in keeping their books was a loose method, which ordinarily would result in more injury to themselves than it would to their creditors. However, it is a matter of common knowledge that in these mercantile and business enterprises in rural communities the same intricate method of bookkeeping which would be found in a business enterprise of a larger community is not practiced. All the testimony discloses that these bankrupts had implicit confidence in each other and with those who stood in a confidential relation to them.

■ The authorities are unanimous in extending to the bankrupt a liberal construction of the bankruptcy statutes, and the courts, under the amendment of 1926 to section 32 of title 11 of the United States Code Annotated, are given a rather wide discretion in passing upon the proper method of keeping books.

The amendment provides that: "Unless the court deem such failure or acts to have been justified, under all the circumstances of the case."

■ The court would feel disposed to grant discharges to all these bankrupts except Troy Magness if there was not a more serious involvement in this case. Troy Magness was the manager of this store. The testimony disclosed that he had lost approximately $60,000 the last two years of the firm's existence in future transactions on the corn, wheat, and cotton exchanges. The testimony of the bankrupts other than Troy Magness is that they knew nothing about this until a short time before they were placed in bankruptcy. There is nothing in the accounts showing these transactions, and it is fair to conclude that Troy Magness carried on these transactions and handled his accounts so as to keep the other members of the firm in ignorance of what he was doing.

■ The second specification of objections involves a far more serious question and one which the court feels that the bankrupts have made no effort whatever to meet the charges against them.

The facts disclose that on June 27, 1928, the Union Trust Company was furnished the following statement.

"State of Arkansas, County of Newton.

"This is to certify that we give T. R. Magness absolute authority to sign our names to any document or note to Union Trust Co., Little Rock, Ark. pertaining to any business of his own also the business of the firm of Magness Brothers.

"[Signed] H. R. Magness
"O. H. Magness
"B. M. Magness."

Troy Magness was at the time the manager of Magness Brothers, and remained so until the petition of involuntary bankruptcy was filed.

Prior to January 1, 1931, the Union Trust Company, after Magness Brothers had made an effort to procure an extension or renewal of their indebtedness, requested a financial statement of the financial condition of

the bankrupts, which was furnished by Troy Magness, the manager of Magness Brothers. This statement showed the following conditions:

| | Assets | Liabilities |
|---|---|---|
| Magness Bros. (Firm) | $110,098.89 | $32,581.96 |
| T. R. Magness | 41,460.00 | 9,750.00 |
| B. M. Magness | 116,395.00 | 14,000.00 |
| H. R. Magness | 232,130.00 | 10,000.00 |
| O. H. Magness | 81,875.00 | (none) |

On November 20, 1930, Troy Magness, as manager of Magness Brothers, made a financial statement to the McGregor Hardware Company, of Springfield, Mo., wherein he showed the firm of Magness Brothers to have assets of $89,530.85 and liabilities of $34,020.20, leaving a net worth of $55,510.65.

On May 25, 1931, Troy Magness, as manager of the firm of Magness Brothers, made another financial statement to the McGregor Hardware Company, showing $80,384.58 assets and $35,121.20 liabilities, leaving a net worth of $45,263.38. Nothing is said in this statement about the $34,564.46 item which was due to the Union Trust Company.

The facts disclose by the record in this case that at the time this financial statement was made on January 1, 1931, to Union Trust Company, Magness Brothers alone owed a note indebtedness of more than $100,000. Troy Magness owed $10,491. The note indebtedness of H. R. Magness at that time was more than $20,000. The note indebtedness of B. M. Magness was more than $16,000. The note indebtedness of O. H. Magness was $14,464. The partnership indebtedness of the firm of Magness & Sons at that time amounted to $56,310.26. These are the amounts of the note indebtedness shown in the schedule of notes dated prior to January 1, 1931, or on that date as shown by their schedules. The entire note indebtedness as shown by the schedules of the bankrupts is as follows: Magness Brothers, $127,601.04; H. R. Magness & Son, $74,078.97; T. R. Magness, $10,491.66; H. R. Magness, $29,142.49; Bert M. Magness, $21,725.06; Ott H. Magness, $17,146.59. In making their financial statements the individual bankrupts did not include their liability for the note indebtedness of the partnership firms.

It is argued by able counsel for the bankrupts that under this state of facts that discharge should only be withheld from Troy Magness. With this view the court cannot agree. The facts are that H. R. Magness, B. M. Magness, O. H. Magness, and Troy Magness were a partnership, doing business under the firm name of Magness Brothers, at Western Grove, Ark. The other three members of the firm made a statement, heretofore set out, to the Union Trust Company of Little Rock, Ark., giving T. R. Magness absolute authority to sign their names to any document pertaining to any business of his own or the business of the firm of Magness Brothers. No stronger language could be used by these parties in giving authority to T. R. Magness to transact business and make financial statements to the Union Trust Company. He was held out as their representative over their own written statement and given absolute authority to represent them. To permit one to set up instrumentalities by which another suffers injury and to make no response in justification would be most inequitable indeed. Not one of these partners has undertaken to explain or justify his acts in signing this statement or made any effort to explain the wide discrepancy between these statements and the actual financial conditions of the firm at the time they were made.

It was solely in the power of these partners to prevent the wrong perpetrated by T. R. Magness in the giving of these financial statements, and since they were in this position, however innocent they may be, they should not be permitted to enjoy the fruits of these false financial statements without bearing the burden of their own agent's wrongdoing. In re Schwartz & Co. (D. C.) 201 F. 166; In re Fineberg et al. (D. C.) 36 F.(2d) 392; Woolen Corp. of America v. Gitnig et al. (C. C. A.) 33 F.(2d) 259; In re Cloutier Bros. (D. C.) 228 F. 569; In re Kellerman et al. (D. C.) 2 F. Supp. 520; Morimura, Arai & Co. v. Taback et al., 279 U. S. 24, 49 S. Ct. 212, 73 L. Ed. 586.

The question of whether or not the partners in the firm of Magness Brothers acquiesced in the acts of T. R. Magness in making these financial statements to the McGregor Hardware Company and the Union Trust Company for credit purposes, either with actual knowledge that these statements were incorrect or with reckless indifference to the actual facts and with no reasonable ground to believe the statements were correct, need not be stressed in view of the fact that each of these partners in Magness Brothers made a separate financial statement signed by themselves. The facts disclose that the Union Trust Company required Troy Magness to have each member of the firm of Magness Brothers sign the financial statement. Troy Magness had submitted to them financial statements, signatures to which had all been made by him. The separate statements signed by O. H. Magness, T. R. Magness, B.

M. Magness, H. R. Magness, and Magness Brothers by T. R. Magness were signed on statements dated January 1, 1931. However, the facts disclose that on March 10, 1931, the Union Trust Company wrote T. R. Magness a letter in which they stated they were returning "the following statements and ask that you have each one signed personally by the maker," and named O. H. Magness, B. M. Magness, and H. R. Magness. According to a letter addressed to the Union Trust Company on March 19, 1931, by T. R. Magness, these statements of the individual bankrupts as heretofore set out were sent to the Union Trust Company. With these facts set out by the objectors and the testimony submitted before the court, not a single member of this firm went upon the stand to explain away these inaccurate statements or in any manner to justify their acts in signing these financial statements. Attorneys contend these bankrupts testified at a creditors' meeting and that this testimony covered fully all issues now in controversy. It is true that they testified at the creditors' meeting, and in this testimony were questioned about their method of bookkeeping and their indebtedness generally, but there was no investigation into these financial statements now in dispute. They made no explanation in this testimony at the creditors' meeting in regard to these incorrect statements. If they did not know these statements were incorrect, the court would not be deaf to a reasonable excuse upon their part for authorizing Troy Magness to make these statements or for their having signed the statements individually, but no explanation in justification of their action is made by them. In the absence of a response in justification of their signing these inaccurate statements or in authorizing Troy Magness to make these financial statements, there is but one reasonable presumption to be entertained, and that is, they had no justification to interpose. The burden is upon the objectors to show that the bankrupts have failed to comply with the statutory requirements for a discharge; but when facts such as disclosed by this record are established, the burden shifts to the bankrupts to explain or justify the making of such reckless and incorrect statements.

The court is of the opinion that the petition for discharge filed by Magness Brothers, Magness & Son, and the individual members of the firm of Magness Brothers, O. H. Magness, Bert M. Magness, H. R. Magness, and T. R. Magness, should be denied. The petition for discharge of Carl R. Magness is granted.