**In re SLOHM (two cases).** *
Nos. 21790, 21791.

District Court, W. D. New York.
March 12, 1935.

LeRoy Stein, of Elmira, N. Y., for bankrupt.

Henry & Denton, of Elmira, N. Y., for objecting creditor.

KNIGHT, District Judge.

Objections to the discharge of the above-named bankrupts were filed by the First National Bank & Trust Company of Elmira, N. Y. Two grounds of objection, the second applying only to Isaac H. Slohm, Jr., were stated, namely: 1. That subsequent to the first day of the four months immediately preceding the filing of the bankruptcy petition herein, and with intent to hinder, delay, and defraud their creditors, the bankrupts transferred, removed, and concealed and permitted to be removed and concealed certain of their property, to wit, their interest in a partnership firm known as Select Arts Studios; and 2, that on or about the 31st day of January, 1932, for the purpose of obtaining credit from the above-mentioned creditor, the bankrupt Isaac Slohm made and delivered to the creditor a statement in writing, signed by him, of his financial condition; that this creditor, relying on said statement, extended additional credit and advanced money to said bankrupt; that said statement was materially false.

The referee has found, with respect to the first objection, that the bankrupts were not guilty of any intent to hinder, delay, or defraud their creditors, and that there was no such removal, concealment, or transfer of property as under the act (section 14 [11 USCA § 32]) to bar their discharge. The bankrupts and Mrs. Slohm's sister and brother-in-law were partners in the Select Arts Studio, a card business, which at the time of bankruptcy was indebted substantially beyond the value of its assets. However, within four months prior to the filing of their petitions, bankrupts secured the sum of $100 for the surrender of their interest in the business. The objecting creditor was advised of the sale prior to its consummation, and shortly after the sale the transfer was recorded in the office of the clerk of the county of Chemung. The trustee made no effort to set aside the transfer. There is nothing in this transaction to suggest that the bankrupts transferred property of great value in lieu of small payment. In fact, it appears that they received for their interest considerably more than its book value. Had the interest of the bankrupts in the partnership come into the hands of the trustee, it is exceedingly unlikely that anything could have been realized from it. It is impossible to find in this transfer any intent to defraud creditors, and the decision of the referee thereon is approved. This being the only objection to the discharge of Mamie Baker Slohm, her discharge is granted.

The statement of Isaac Slohm is alleged to be false in two respects. The first of these is the item of accounts payable, set forth in the amount of $6,874.71. The books of the bankrupt contain a balance sheet showing accounts payable in the amount of $16,165.08. Bankrupt explains this discrepancy by stating that $4,248.52 was deducted from the aforesaid amount

because it was owing to the wife, and it was thought that it would never have to be repaid. The sum of $2,701.81, owing to bankrupt's son, was deducted for the same reason. It should be noted, however, that an entry of $714.72 back interest was made on the account shortly prior to the filing of the petition, and a claim, upon which a dividend was paid, was filed on behalf of the son. It thus appears that, both before and after the making of this statement, the bankrupt considered the account as payable. The deduction of the amount owing to the wife was improper despite the testimony that bankrupt and his wife no longer considered it an account payable but had merely neglected to charge it off on the books. In re Rosenfield (D. C.) 1 F. Supp. 924; Josephs v. Powell & Campbell (C. C. A.) 213 F. 627; In re Miller (D. C.) 192 F. 730. The omission of these liabilities from the statement was clearly material. The deduction of $2,340.04 which Mrs. Slohm testified was erroneously included in the total of accounts payable in the balance sheet is satisfactorily explained by her testimony, and was entirely proper. The largest item was an account in favor of Stern, Slohm & Baker, which apparently resulted from withdrawal of funds invested in Stern, Slohm & Baker, and consequently no repayment was necessary.

■ The other item cited as false is the entry of "Paid in Life Insurance $10,675.-00." Bankrupt testified that this item was intended to show premiums paid and not the cash surrender value. In fact, he stated that he did not know that there was any paid-in value. Bankrupt included it in the statement because he wanted to show where the money went to. No other items were included in the statement, however, to indicate how the balance of his income was spent. The cash surrender value of the policies was approximately $2,000.

The referee has found that the statement as to life insurance is immaterial, because insurance policies are exempt from levy and execution under the laws of New York state, and the objecting creditor is presumed to be familiar with that fact. Not all life insurance is exempt under section 55-a of the Insurance Law of New York state (Consol. Laws, c. 28). The inclusion in the statement, as an asset, of an item which was overvalued to the extent of about 25 per cent. of the bankrupt's net worth cannot be overlooked as of no moment. Bankrupt included the item in the state-

ment under the heading "Assets." There were no printed words calling for the inclusion of the value of life insurance under the heading, but bankrupt wrote in "Paid in Life Ins. $10,675.00." At another point in the statement were certain questions in regard to insurance. Bankrupt failed to answer one of the questions, which asked for the name of the beneficiary of the life insurance policies. It would naturally be presumed from such a course of action that the policies had a surrender value in the amount stated which was available to creditors. The presumption might well have been drawn that bankrupt's estate was the beneficiary. This insurance was listed as an asset either without a belief in the truth of the entry or with a reckless disregard for the truth. The making of a statement without regard to the facts and without consultation of available records for determining the facts is as culpable as compiling a statement deliberately falsified. Morimura, Arai & Co. v. Taback, 279 U. S. 24, 49 S. Ct. 212, 73 L. Ed. 586; In re Eastham, Jr. (D. C.) 51 F.(2d) 287, 288; Woolen Corp. of America v. Gitnig (C. C. A.) 33 F.(2d) 259; In re Kellerman (D. C.) 2 F. Supp. 520.

■ While it is true, as stated in Local Loan Co. v. Hunt, 292 U. S. 234, 54 S. Ct. 695, 699, 78 L. Ed. 1230, 93 A. L. R. 195, that "One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligation and responsibilities consequent upon business misfortunes,'" it must also be taken into consideration that, as stated in Re Eastham, supra, where one secures credit on the basis of a statement, "The law requires that in such cases he share with his creditors the knowledge of his condition which he has and the purpose which is his. If his bargain is made in reliance, not upon the value of assets, but upon a purpose to repay, the creditors should know this is what they in turn must rely upon." In the present case the bankrupt misrepresented his net worth by approximately $15,000. He is presumed to know and intend the natural consequences of his acts. The bankrupt did certain acts upon which the creditor relied and thereby suffered a loss. The intent to deceive by means of the false statement is presumed, and the bankrupt's mere statement that he had no intent to deceive or defraud is insufficient to overcome the force of the pre-

354

sumption. In re Rosenfield, supra; In re Smith (D. C.) 232 F. 248.

The referee has found that the creditor did not rely on the statement in giving or extending credit, because it required bankrupt to post as much collateral as he was able to produce, and refused to grant further discounts. Under section 14b (3) of the Bankruptcy Act, 11 USCA § 32 (b) (3), the obtaining, by means of a false financial statement in writing, of an extension of credit on present indebtedness is sufficient basis for refusal of a discharge. Erickson v. Bicknell (C. C. A.) 28 F.(2d) 729; Morton v. Snider (C. C. A.) 20 F.(2d) 469; In re Weitzman (D. C.) 11 F.(2d) 897; In re Waite (D. C.) 223 F. 853. The fact that collateral is posted in addition to the giving of the statement does not relieve the debtor where the statement as well as the collateral were relied upon. In re Savarese (C. C. A.) 209 F. 830. The bank did allow bankrupt an extension of time to pay his then existing indebtedness, subsequent to the giving of the statement and collateral, and this is sufficient to give rise to the presumption that the creditor extended the time for payment in reliance, at least partially, upon the statement of the bankrupt. In re Reed (D. C.) 191 F. 920; In re Simon (D. C.) 268 F. 1006.

It is evident that the bankrupt, Isaac Slohm, obtained an extension of credit from the bank by making a materially false statement in writing in respect to his financial condition, upon which the bank relied. The second objection to his discharge must therefore be sustained, and discharge denied.