$$A \diagdown \overset{Se}{C} = CH - CH = CH - CH = CH - CH = CH - C \overset{Se}{\diagup} A$$

wherein A represents a phenylene group, R represents an alkyl group and X represents an acid radical.

IV. The answer to the complaint states that the defendant refused to grant Letters Patent of the United States to the plaintiff on the ground that none of the aforesaid twelve claims defines subject matter which the defendant regarded as patentable over the following references:

| König | 1,524,791 | February 3, 1925 |
|---|---|---|
| Wahl | 1,863,679 | June 21, 1932 |
| White | 1,990,681 | February 12, 1935 |
| Hamer, British | 351,555 | June 29, 1931 |
| Hamer, British | 354,826 | August 19, 1931 |

Mills and Hamer, "Journal Chemical Society," 1920, page 1557,
König, "Berichte," 57, page 685,
Clarke, "Journal Chemical Society," 1928, pages 2314, 2318 and 2319,
Phot. Journal of Great Britain, January 1928, pages 24–27.

V. The defendant relied chiefly upon the König "Berichte" reference, the Board of Appeals holding by its supplemental decision dated October 3, 1939 that: "It is our view that a reasonably definite disclosure of the formula of the product is a sufficient anticipation of product claims."

VI. The König "Berichte" reference contains the following formula:

$$C \cdot (CH:CH)_n \cdot CH:C$$

wherein n may have the values 0, 1, 2, 3, etc. and Y may have several different values, including a cyclo-seleno group.

VII. In the plaintiff's product, selenium takes the place of Y and n equals 3. König, however, does not state that he has produced such a product as the plaintiff's, but in effect only states that such a compound may exist. König makes no other statement concerning the applicant's product.

VIII. The references, in addition to the König "Berichte" reference relied upon by the defendant, do not contain a description of the plaintiff's product or of a process for preparing the plaintiff's product.

## Conclusions of Law.

 I. The production of a new group of chemical compounds, even though some one has stated that such a group of compounds may exist, may be an invention within the meaning of the patent laws.

II. Claims 4 to 15, inclusive, contained in the Brooker application Serial No. 66,859, filed March 3, 1936, define subject matter which is patentable over the references relied upon by the defendant and plaintiff is entitled to the issuance of a patent containing these claims.

## In re CAMBERLANGO.

### No. 39104.

District Court, E. D. New York.
Jan. 21, 1941.

Henry W. Parker, of New York City, for objecting creditor for motion.

Joseph Newman, of New York City, for bankrupt, opposed.

INCH, District Judge.

The bankrupt has been granted his discharge by the referee. The Morris Plan Industrial Bank of New York, an objecting creditor, having been unsuccessful before the referee, seeks a review of this decision of the referee and for an order denying a discharge to the bankrupt. The facts are simple and are not substantially in dispute.

The bankrupt and his wife were the owners of an eight family house at 564-7th Ave., Brooklyn, which was in need of certain plumbing repairs. A salesman for a plumbing concern learned of this, and, as a result, the bankrupt made arrangements with him by which the necessary plumbing materials would be obtained by means of a loan approximating $600 from some bank, which loan would be based on a financial statement signed by the bankrupt and his wife. This statement presented to the Morris Plan Bank which made the loan, was absolutely false and misleading. The statement failed to set forth that the bankrupt had previously obtained other loans from other institutions, of considerable amount, which had not at the time been paid.

Testimony was produced by the objecting creditor that, not only was reliance placed on this statement of the bankrupt in making the loan but that, if it had known the fact of the other unpaid loans, it would not have made the loan.

If this were all I am sure the learned referee would not have hesitated to have refused the discharge. However, the explanation of the bankrupt is one that might create sympathy for him and I feel that this sympathy has disposed the referee to overlook the fact that the bankrupt did obtain a substantial sum of money from the Morris Plan Bank by a false statement.

The explanation of the bankrupt, above referred to, in substance is that this salesman, who was not produced by him as a witness, and which the attorney for the objecting creditor said he had searched for but couldn't find, presented to the bankrupt a financial statement in blank, which he requested the bankrupt to sign. The bankrupt and his wife then signed it in that condition. The salesman then stated that he would fill out this statement and obtain from some bank a sufficient loan to make possible the purchase of the plumbing materials which the salesman was selling and the bankrupt needed. The bankrupt says that he told this salesman about these other loans outstanding. Nevertheless, the statement when presented to the Morris Plan Bank not only omitted such other loans but affirmatively stated under "obligations" the word "none".

Whether this salesman was a scamp who cared more for his commission on the sale than he did for the bankrupt's welfare, or whether he felt that it was unimportant to leave out from the statement the other loans, or whether he had no information from the bankrupt about other loans, are questions which it is not necessary to decide. What is undisputed is that the bankrupt allowed this salesman to borrow money for him from some bank on a financial statement actually signed by him in blank the information to be filled out by the salesman. That this agent of the bankrupt then presented to the Morris Plan Bank for the purpose of obtaining the loan for the bankrupt a statement which, through neglect or intention was false, omitting entirely the previous unpaid loans to the bankrupt and a statement that indicated not only absence of such information but affirmatively stated there were "none".

In such circumstances, however sympathetic one may feel for the bankrupt, he, as a matter of fact, obtained the loan and, in the words of the act, "made or caused to be made a materially false statement in writing respecting his financial condition".

Such negligence is inexcusable. The bankrupt received the benefit of the loan but there is no evidence that he insisted on seeing or even cared to see the statement when prepared, or that he took any steps to see that the bank selected by this agent had proper information before making the loan. I am of the impression that he felt he couldn't get the loan if the bank knew the truth. Responsibility for the statement cannot be so easily shifted. In re Savarese, 2 Cir., 209 F. 830; In re Kellerman, D.C., 2 F.Supp. 520; In re Ratner, D.C., 2 F.Supp. 530.

The order of the referee is reversed and the discharge denied.