In the Matter of Shirley Diane
HADLEY, Debtor.

FIRST NATIONAL BANK IN FT.
MYERS, Plaintiff,

v.

Shirley Diane HADLEY, Defendant.

Bankruptcy No. 81–1851.
Adv. No. 81–627.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 28, 1982.

Gordon R. Duncan, Fort Myers, Fla., for plaintiff.

Herbert Fried, Fort Myers, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding instituted by First National Bank in Ft. Myers (the Bank) and the matter under consideration is the dischargeability, vel non, of an obligation owed to the Bank by the Chapter 7 Debtor, Shirley Diane Hadley (the Debtor). The Bank seeks a determination that the balance owed by the Debtor on her Visa credit card is a non-dischargeable debt by virtue of § 523(a)(2)(A) of the Bankruptcy Code. The claim of non-dischargeability is premised on the allegation that the Debtor obtained property by false pretenses and false representation. Specifically, the Bank contends that the Debtor exceeded the credit limit set by the Bank and continued to use the Visa card although she was unemployed at the time relevant. She was without any significant means of support and without reasonable expectancy of an ability to pay for goods charged to the Visa account.

The facts germane to the resolution of this controversy as developed at a final evidentiary hearing are as follows:

On March 29, 1980, the Debtor, in her individual capacity, applied for a Visa credit card which was issued by the Bank on April 14, 1980. The Bank mailed the Visa card, account number 4311–941–592–872, to the Debtor. In the same communication, the Debtor was notified that the Visa card carried a $500 credit limit. The evidence revealed that the Debtor used the card frequently for small purchases throughout the months of May, June, July and August of 1980 and timely remitted payments to the Bank. Although the statement of August 27, 1981 reflected an outstanding balance which was $23.49 in excess of the Debtor's credit limit, the Bank did not formally notify the Defendant that she had exceeded the limit until September of 1980 when the Bank sent a special request with the September billing, that the Debtor remit a payment of $161.18 (in addition to the regular monthly payment) in order to bring the Debtor's credit balance within the credit limit set by the Bank. From October of 1980 until December 10, 1980, when the Debtor's Visa card was ultimately confiscated, the Bank's monthly billings reflected continuous charges (generally for items costing less than $50 each) and an outstanding balance always in excess of the credit limit, i.e. October closing balance—$925; November closing balance—$991.46; December closing balance $1,985. The Debtor failed to make any payments after September 22, 1980. (Exh. # 6) During this period, the Bank mailed at least seventeen (17) notices to the Debtor some of which were sent to her home address and some to her sister's address. The notices advised the Debtor of the extent of the over expenditures and that failure to cure the overages would result in revocation of her credit privileges.

It further appears from the record that between September, 1980 and December, 1980, the months during which the unusual and excessive purchases were made, the Debtor was separated from her husband and was unemployed without any meaningful income of her own. Her only source of income was money paid to her from an earlier sale of property which was insufficient to pay for the charges which were made between September and December of 1980.

The record further reveals that during the period relevant, the Debtor entered a drug rehabilitation program in a religious facility in Harmony, North Carolina, stayed with relatives in Jackson, Mississippi and eventually returned to Fort Myers sometime in mid-December. The Debtor testified that she had suffered from severe depression and, in fact, did not recall incurring many of the debts which appeared on the credit statements as December 1980 charges. It is sufficient to note, however, that the overwhelming majority of the purchases made during this time were made in multiples of three or four per day. Further, each of the items, which were purchased separately at the same store, cost less than $50. Therefore, the credit purchases did not require a pre-credit check which is standard procedure in many businesses for credit purchases exceeding $50.

The Debtor contends that she did not receive most of the monthly statements or notices of over extension, however, the evidence is clear that the Debtor did make one payment in September of 1980 shortly after a monthly billing was sent by the Bank. (Plf's Exh. # 6) This payment was received by the Bank on September 22, 1980 in the exact amount as the "minimum payment due" on the previous billing statement, i.e. closing date of August 27, 1980. It is also noteworthy that 12 days prior to the receipt of this payment, the Bank had mailed an "overlimit notice" to the Debtor. The documentary evidence supports a finding that the Debtor became aware of a credit limit through this notice, if not earlier; yet she continued to use her Visa card despite her admitted inability to pay for the purchased items.

On May 18, 1981, the Bank was awarded a money judgment against the Debtors in the County Court of Lee County in the amount of $1,985 plus $32 in costs. The Debtor consulted an attorney regarding her impending bankruptcy on August 5, 1981 and filed a Chapter 7 petition for relief on

October 8, 1981. The Bank challenges the dischargeability of the subject indebtedness on the grounds that the debts were incurred through false pretenses or false representation which acts as a bar to discharge under § 523(a)(2)(A) of the Bankruptcy Code.

Section 523 provides in pertinent part: (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation ...

A claim of non-dischargeability under § 523(a)(2)(A) may be sustained where the Plaintiff establishes that the Defendant made, with intent to defraud, a materially false representation which was relied upon by the Plaintiff. *In re Ciavarelli,* 16 B.R. 369 (Bkrtcy.M.D.Fla.1982); *In re Schnore,* 13 B.R. 249 (Bkrtcy.W.D.Wis. 1981). Further, it is generally recognized that a credit card purchaser impliedly represents to both the merchant and the ultimate creditor not only his intent but also his ability to pay for any credit purchases. Thus, anyone who purchases on credit while knowing that he is unable to meet the financial obligations outlined in the credit contract obtains goods through false pretenses. *In re Harper,* 19 B.R. 207 (Bkrtcy. M.D.Fla.1982); *In re Boydston,* 520 F.2d 1098 (5th Cir.1975).

In this case, the Debtor by her own admission was aware of her inability to pay the debt which she incurred through excessive use of her Visa card. Further, although the Debtor claims no knowledge of a bank imposed credit limit, the Debtor appeared to exercise caution when using the credit card to keep the purchase amounts below $50 even though on several occasions multiple purchases were made in one store on the same day.

In light of the foregoing, this Court is satisfied that the debt due the Plaintiff on Visa Account No. 4311–941–592–872 which was reduced to judgment in the County Court of Lee County, Florida is non-dischargeable as incurred by false pretenses.

A separate final judgment will be entered in accordance with the foregoing.