In re Richard B. BELLESFIELD, Jr. and Joan D. Bellesfield, Debtors.

**BARCLAYS AMERICAN FINANCIAL CORP., Plaintiff.**

v.

**Richard B. BELLESFIELD, Jr. and Joan D. Bellesfield, Defendants.**

**Bankruptcy No. 82–00857T. Adv. No. 82–2224T.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 10, 1984.

Hans Edward Solum, Jr., Ridley Park, Pa., for plaintiff.

Karl E. Friend, Allentown, Pa., for defendants.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

In this adversary proceeding, the plaintiff, Barclays American Finance Corporation, has filed a Complaint requesting that the debt owed to it by the Chapter 7 defendants-debtors be determined to be non-

dischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A). For the reasons hereinafter given, we shall deny the relief requested in the plaintiff's Complaint and find the debt to be dischargeable.[1]

## I. FACTS

In 1981, the husband and wife defendants applied by mail to the plaintiff for an unsecured loan of $5,000. The plaintiff is a Louisiana corporation, and is in the business of making unsecured loans by mail. At no time was there any personal contact between the defendants and any of the plaintiff's agents. The plaintiff approved the defendants' loan application based on the information supplied by the defendants, none of which was false or misleading. Also, the defendants signed a promissory note for repayment of the loan.

On or about September 2, 1981, the defendants received two checks from the plaintiff. Both checks were dated August 26, 1981. The September 2, 1981 bank date stamps on the two checks indicate that the checks were cashed on this date.

One check was for $1,649.81, and was made jointly payable to an Easton, Pennsylvania loan company, Kressler, Wolfe, and Miller, and to the defendant Richard Bellesfield. Mr. Bellesfield endorsed this check and turned it over to the loan company, apparently on the same day that he received it. The proceeds of this check were used to pay off the balance of a loan debt which the defendants had incurred for making the down payment on Mr. Bellesfield's pick-up truck. The loan had been secured only by the defendants' household goods, and not by the pick-up truck itself.

The second check was for $2,705.57, and was made payable to both defendants. The defendants used the proceeds of this check to pay for household and family expenses, including utility bills, fuel oil, and school clothing for their four children.

---

1. This Opinion constitutes the findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

At the hearing of this matter, only the two defendants testified. At the request of the plaintiff's counsel, each was sequestered during the other's testimony. Their testimony was consistent in all material respects. They testified that both when they applied for the loan and received the loan proceeds, they intended to repay the loan. However, shortly after receiving the loan proceeds, they realized that their financial difficulties were severe. On September 3, 1981 or September 4, 1981, they made an appointment to see an attorney on September 4, 1981. Their purpose in doing so was to discuss with him their financial difficulties and the possibility of their filing bankruptcy. They met with the attorney on September 4, 1981. After speaking with the attorney, the defendants decided to file bankruptcy and not to repay any of the plaintiff's loan. It is unclear from the record whether the defendants made this decision immediately after speaking with the attorney or at some time thereafter. The defendants filed bankruptcy on March 1, 1982, represented by the attorney with whom they first spoke on September 4, 1981.

The defendants also testified that they had not discussed filing bankruptcy before they received the loan proceeds. They further testified that they had no knowledge of bankruptcy law prior to their consultation with the attorney on September 4, 1981. Additionally, they had had no contact with any attorney for at least five years before this consultation.

The defendants never repaid any of the plaintiff's loan. At the time of their bankruptcy filing, the defendants had several secured and unsecured creditors in addition to the plaintiff.

## II. DISCUSSION

The plaintiff's contention is that the defendants' debt to it is nondischargeable pursuant to Section 523(a)(2)(A) of the

Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), which states:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(2) for obtaining money, property, or services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...."

To prevail in an action under § 523(a)(2)(A), the plaintiff must prove by clear and convincing evidence:

1) that the debtor made the representations;

2) that at the time he knew they were false;

3) that he made them with the intention and purpose of deceiving the creditor;

4) that the creditor relied on such representations; and

5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Fains,* 37 B.R. 539 (Bankr.E.D.Pa. 1984); *In re Teal,* 35 B.R. 360 (Bankr.E.D. Pa.1984); *In re Traurig,* 34 B.R. 637 (Bankr.S.D.Fla.1983).

In the present case, the plaintiff claims that the defendants intentionally deceived the plaintiff by accepting the money loaned to them by the plaintiff even though the defendants never had any intention of repaying any of the money. The plaintiff further claims that such action by the defendants, coupled with the plaintiff's reasonable reliance upon the defendants' promissory note, renders the debt nondischargeable under § 523(a)(2)(A).[2]

The plaintiff correctly, and without dispute, asserts that the requisite intent to deceive under § 523(a)(2)(A) can, in appropriate situations, reasonably be inferred from the totality of circumstances of a

---

**2.** The plaintiff does not allege that the defendants made any false representations on their loan application.

case. In applying this proposition to the circumstances of this case, the plaintiff points out that the defendants made an appointment with and consulted an attorney about the possibility of their filing bankruptcy within only two days of their accepting the proceeds of the plaintiff's loan. Furthermore, this consultation eventually led to their bankruptcy filing and that attorney's representation of them therein. Also, the defendants never repaid any of the loan to the plaintiff. The plaintiff's main contention is that the Court should reasonably infer from these facts that the defendants accepted the loan proceeds with no intention of ever repaying anything to the plaintiff. These facts, claims the plaintiff, render incredulous the defendants' testimony that their intention not to repay the loan did not come into being until after they had spoken with their attorney on September 4, 1981. Rather, argues the plaintiff, the only reasonable inference is that such intention already existed prior to September 2, 1981, the date that the defendants received the two checks from the plaintiff.

■ The underlying rationale of the plaintiff's argument appears to be that the acceptance of the proceeds of a loan constitutes an implied representation by the borrower to the lender that the borrower intends to repay the loan. Therefore, suggests the plaintiff, the lack of such intent to repay would constitute a false representation within the meaning of § 523(a)(2)(A). The plaintiff's rationale is analogous to that used by the Courts in determining the question of the dischargeability of credit card debts under § 523(a)(2)(A). It is well established that a credit card holder's use of his credit card is considered to be an implied representation to the credit card issuer that the holder has the ability and the intention to pay for his purchases, upon which the issuer relies in extending credit. See, for example, *In re Kramer*, 38 B.R. 80 (Bankr.W.D.La.1984); *In re Vegh*, 14 B.R. 345 (Bankr.S.D.Fla.1981); *In re Ciavarelli*, 16 B.R. 369 (Bankr.E.D.Pa.1982).

■ However, even assuming *arguendo* that the plaintiff's aforementioned underlying rationale is valid, we still do not believe that the plaintiff has proven by clear and convincing evidence that the defendants did not intend to repay the loan when they accepted the loan proceeds. Although the facts relied upon by the plaintiff do raise our suspicions somewhat and are relevant to the question of the defendants' intent, they simply are not sufficiently compelling to constitute clear and convincing evidence of the defendants' intent to deceive the plaintiff. In this regard, we believe that the defendants' explanation of their intent and conduct is not unreasonable and that they were generally credible witnesses at the hearing.

We are also mindful of, and in agreement with, the following statement from *In re Lipsey*, 41 B.R. 255, 257 (Bankr.E.D.Pa. 1984), a credit card case involving an implied false representation:

"The frauds included under § 523(a)(2)(A) require moral turpitude or intentional wrong, and it must *affirmatively* appear that the representations were knowingly and fraudulently made. *Luft v. Slutzky (In re Slutzky)*, 22 B.R. 270 (Bankr.E.D.Mich.1982)." (Emphasis added).

In our judgment, the facts relied upon by the plaintiff are too tenuous to constitute an affirmative showing of the defendants' fraudulent intent under § 523(a)(2)(A).

Furthermore, the plaintiff has not cited any cases in support of its contention that the facts of this case constitute an intent to deceive on the part of the defendants within the meaning of § 523(a)(2)(A), and our own research has disclosed no cases that would lead us to that conclusion. To the contrary, the cases we have found which are most closely analogous to the present case are cases involving the question of the dischargeability of credit card debts under § 523(a)(2)(A), and the decisions in those cases tend to undermine the plaintiff's contention in our case. In the credit card cases, the Courts generally examine many factors in determining the dischargeability

question, i.e., whether the debtor had the ability and the intention to pay for his credit card purchases at the time that he made them. For example, in *In re Kramer*, 38 B.R. 80, 83 (Bankr.W.D.La.1984), the Court states:

"In order to establish by circumstantial evidence the fraudulent intent, courts have looked to certain criteria to evidence such. These criteria include the following: (1) the length of time between making the charges and filing bankruptcy; (2) the number of charges made; (3) the amount of the charges; (4) whether the charges were above the credit limit on the account; (5) a sharp change in the buying habits of the debtor; (6) whether charges were made in multiples of three or four per day; (7) whether charges were less than the $50.00 floor limit; (8) the financial condition of the debtor was hopelessly insolvent when the charges were made; (9) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made; (10) the debtor's employment circumstances; and (11) the debtor's prospects for employment. See *In re Pannell*, [27 B.R. 298 (Bankr.E.D.N.Y.1983)], supra; *In re Stewart*, 7 B.R. 551 (B.C.M.D., Ga., 1980); *In re Boydston*, 520 F.2d 1098 (5th Cir.1975); *In re Hadley*, 25 B.R. 713 (M.D.Fla.1982); *In re Smith*, 25 B.R. 396 (D.Md., 1983)...."

In considering so many factors, the Courts essentially attempt to determine whether or not the debtor has engaged in a pattern of conduct exhibiting fraudulent intent. We realize that the analogy between the credit card cases and our case is far from precise and that some of the factors considered in those cases are inapplicable to our case. However, they lend additional support to our belief that the main factor relied upon by the plaintiff—the short period of time between the defendants' acceptance of the loan proceeds and their consultation with the attorney—is not sufficient, in itself, to provide clear and convincing evidence of fraudulent intent.

The plaintiff also contends that the defendants' use of the loan proceeds shows their fraudulent intent. In this regard, the plaintiff makes two arguments. First, it argues that the loan check jointly payable to Mr. Bellesfield and the aforementioned local loan company was used to pay off the loan company's lien against Mr. Bellesfield's pick-up truck, thereby substituting for a secured debt the plaintiff's unsecured debt which the defendants felt could be easily discharged in bankruptcy. The fallacy of this argument is that the debt to the loan company, although incurred in order to make the down payment on the truck, was not secured at all by the truck. Rather, it was secured only by the defendants' household goods, with such lien being subject to avoidance pursuant to Section 522(f)(2) of the Bankruptcy Code, 11 U.S.C. § 522(f)(2). Thus, we find this argument to be of no merit.

Secondly, with regard to the defendants' use of the loan proceeds, the plaintiff argues that the defendants' fraudulent intent is shown by the defendants' use of the proceeds of the other loan check to pay for household and family expenses, including utility bills, fuel oil, and school clothing for their four children rather than using the money to reduce other outstanding debt in a type of debt consolidation. In that both of the defendants were employed, adds the plaintiff, the defendants should have been able to meet most, if not all, of their household and family expenses with their income from employment. Even assuming *arguendo* the logic of the plaintiff's argument, there is no evidence whatsoever that the defendants did not require these loan proceeds for their household and family expenses. Furthermore, there is no suggestion that the money was spent on anything other than necessities. We might well view this case in a much different light if the defendants had used some or all of these loan proceeds to purchase luxury items. However, based on the circumstances of the present case, we find the plaintiff's argument to be of no merit.

For all of the foregoing reasons, we conclude that the debt owed by the defendants to the plaintiff is dischargeable.