In the Matter of Laymon Berman WALKER, Debtor.

CITIZENS STATE BANK OF MARYVILLE, Plaintiff,

v.

Laymon Berman WALKER, Defendant.

Bankruptcy No. 82–02442–SJ.
Adv. A. No. 82–1762–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

June 28, 1985.

Frank H. Strong, Maryville, Mo., for plaintiff.

Jack N. Bohm, Buck, Bohm & Stein, Kansas City, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE OF NONDISCHARGEABILITY OF DEFENDANT'S INDEBTEDNESS TO PLAINTIFF IN THE SUM OF $43,-463.91

DENNIS J. STEWART, Bankruptcy Judge.

Now before the court on remand from the court of appeals and the district court

is the plaintiff's complaint for a decree of nondischargeability of an indebtedness to it of $43,463.91 on the grounds that it was created by the fraud of the defendant's agent, his wife, in misrepresenting levels of sales and inventory to the plaintiff in order to gain extensions of credit. See § 523(a)(2) of the Bankruptcy Code.

### Procedural History of This Action

After a full evidentiary hearing in which the material portions of the evidence demonstrated that the fraudulent misrepresentations which clearly resulted in a loss of $43,463.91 to the plaintiff bank were committed by the debtor's wife; that she was his agent for the purpose of making representations to the bank concerning business income and the level of inventory; and that, therefore under the standard legal principles which at that time governed the question, the agent's fraud had to be imputed to her principal with the result that the indebtedness was not dischargeable in bankruptcy, this court entered its final decree of nondischargeability of that indebtedness.[1]

The debtor thereupon appealed the nondischargeability decree to the district court. The district court cited cases which stood for the proposition that a non-bankrupt's agent's fraud could not, absent fraudulent participation and intent of the principal, warrant denial of a discharge but could provide a ground for a decree of nondischargeability.[2] Nevertheless, although these authorities would seem to have supported the decision rendered by the bank-

ruptcy court, the district court reversed the judgment of the bankruptcy court.[3]

The plaintiff bank then appealed from the judgment of the district court to the United States Court of Appeals for the Eighth Circuit. That court in *Matter of Walker*, 726 F.2d 452 (8th Cir.1983), as is well within its power and responsibility, seemed to develop yet another possibily governing rule of law—that the debtor in bankruptcy can be held liable in respect to his discharge for the fraud of his agent only if he knew or should have known of the misrepresentation.[4] The action was remanded to this court[5] for findings on that issue.

### The Proceedings in This Court After Remand

Because of the possible change in the law effected by the court of appeals, this court conducted a supplemental hearing after remand in order to ensure that the parties were granted a sufficient opportunity to offer evidence on the material factual issue of whether the debtor knew or should have known of his wife's fraudulent misrepresentations to the plaintiff bank.[6] Considering the evidence which was then adduced together with the relevant evidence formerly submitted in the initial hearing in which this court's former judgment was based warrants the following findings of fact: At the time the material misrepresentations were made by the debtor's wife, the debtor had been briefly hospitalized with a nervous disorder which would perhaps be considered by objective standards to be of a minor character.[7] But

---

1. The decree of nondischargeability was entered on December 14, 1982, by this court.

2. See p. 177 of the text of this memorandum, *infra*.

3. The reversal was well within the jurisdiction and power of the district court, but as noted in the further text of this memorandum, it appears in retrospect to have been on the ground of potential denial of discharge only.

4. See pp. 180–81 of the text of this memorandum, *infra*.

5. *Id.*

6. Adequate opportunity was also granted to offer evidence on any other existing ground for denial of discharge or decree of nondischargeability.

7. For a single week in December 1979, the defendant was hospitalized. Although he believed that he had had a heart attack, this was not borne out by medical diagnosis. Again in January 1980, he was hospitalized in St. Luke's Hospital in Kansas City for one week. After discharge, he worked in the business for one hour or two each morning and another hour or two in the afternoon. He spent intermittent periods of time in the hospital in 1980 and 1981, during which he contends his contact with the business

the subjective and emotional effects in both the debtor and his wife were seemingly profound. According to their uncontradicted testimony it resulted in the debtor's turning over complete charge of his business activities to his wife *and his refusal thereafter* to discuss any business matters with her. She fully cooperated in this effort to keep business affairs out of the mind of the debtor. To this end, she affirmatively states, she actively concealed her fraudulent activities from the debtor in order to aid and benefit his peace of mind. He, in fact, according to their testimony did not know of her fraudulent misrepresentations until sometime after he had consulted his current attorney for the purpose of filing the within bankruptcy proceedings. And, upon the discovery of the fraud, an appropriate report of it was made.[8] The evidence also shows, on the other hand, as the plaintiff points out in its pretrial brief, that the defendant had access to the books and records of the business and that his examination of these books and records would and should have resulted in his discovery of the fraud.[9]

## Conclusions of Law

It is perhaps crucial to note that, when the complaint was filed by the plaintiff in this action, it mentioned the section on denial of discharge as well as the statute on the dischargeability of individual debts. "Defendant," it was said in the complaint, "has not yet been discharged under section 727 of the Bankruptcy Code, but the order of this court dated August 16, 1982 in the bankruptcy proceedings concerning him provides that the last date for filing objections to the discharge is October 9, 1982." The complaint was filed on October 8, 1982. This court, however, because the bankruptcy case of Laymon Berman Walker had been filed subsequent to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, which dropped the false financial statement as grounds for denial of discharge, ignored the potential claim for denial of discharge. "In enacting the new Code, Congress chose to remove the use of a false financial statement as a ground for denying discharge but to retain it as a ground for determining that a particular debt is not dischargeable." *Matter of Gray*, 22 B.R. 676, 679 (Bkrtcy.W.D.Wis. 1982). Consequently, no findings or conclusions were made on this potential issue. The court believed that there could be virtually no syntactical analysis of the above-quoted reference to § 727 which would result in an interpretation that the issue of the debtor's entitlement to a general discharge had been raised.[10] But the court

---

to have been minimal. But his periods of hospitalization are demonstrated by his answers on cross-examination to have been relatively brief in 1980 and 1981. *The facts which are demonstrated by the evidence in this regard warrant this court in finding and concluding that the defendant was not, throughout this period of time, not so impaired physically or mentally impaired that he was incapable of understanding business affairs and discovering, upon due inquiry, the misrepresentations made by his wife.*

8. There are some facts which sully this contention that the defendant reported the matter to the plaintiff when he discovered the fraud. It was earlier reported to defendant by a bank official that the latter had reason to believe that three purchases represented by Mrs. Walker to have been made (by Middleswarts, Burns, and Christenson) had not really been made at all. At the time of this inquiry, however, Mr. Walker, the defendant readily purported to have knowledge that the purchases had in fact been made. See pp. 42–45 of the transcript of the hearing of November 19, 1982.

9. The evidence which has been adduced demonstrates that the defendant regularly received and signed the accountant's reports of business activities; that he had access to the store premises at all times, and could see what the inventory was; that he should have been able, on the slightest inquiry requiring but very little effort, to have ascertained the level of sales; and that, accordingly, he should have been able to tell that the income which he was taking out of the store for living expenses ($2,000 per month) could not have been derived from anything but fraudulent representations to the bank and advances of cash thereby received on account of nonexistent sales reported to have been made.

10. The district court, in making its ruling on appeal adverted in a concluding footnote to the possibility that its ruling may have been rendered, in effect, obsolete by the new Bankruptcy Code, but also stated that it had not been requested to rule on that question by the parties.

made no findings in this regard; it simply pretermitted them. The concatenation of events to which this pretermission has given rise perhaps demonstrates how blameworthy trial courts can be—especially specialized trial courts like those which sit in bankruptcy cases—for omitting seemingly inconsequential details such as were omitted in this court's opinion in this case. For, after this court—without explaining why it did not expound on the general discharge issue—issued its decree of nondischargeability, the parties, on appeal, briefed the issue of the defendant's entitlement to discharge. Case authority was cited to the district court which applied exclusively to the subject of denial of discharge under the pre-1979 bankruptcy law and which expressly excluded application to the subject of nondischargeability. Consequently, in a brief written opinion, the district court reversed the judgment of this court, relying exclusively on those cases. The pertinent portion of the district court opinion was to the following effect:

"The bankruptcy judge based his decision on the rule of agency law that a fraud perpetiated by an agent will be attributed to the principal where the agent was acting within the scope of his authority. While this is generally a correct statement of the law, the rule is modified where the principal is a debtor in a bankruptcy proceeding. In such a case, the conduct of a debtor's agent will only render a debt dischargeable [sic] where the debtor knew or should have known of the fraud. *In re Lovitch,* 117 F.2d 612, 614 (2d Cir.1941), *In re Brown,* 412 F.Supp. 1066 (W.D.Okla.1975), *In re Berman,* 40 F.Supp. 242 (E.D.N.Y.1941), *In re Maloof,* 2 F.2d 373, 374 (N.D.Ga. 1924), *In re Schwartz & Co.,* 201 F. 166, 168 (S.D.N.Y.1912).

"Denial of a discharge, a harsh measure, should not depend solely on a bankrupt's

entrusting an agent with authority to manage his affairs. A discharge should only be denied where the debtor had some type of personal involvement."

This court, however, as noted above, had not purported to deny the debtor's discharge, but only to hold the individual indebtedness to plaintiff to be nondischargeable. This was a result which was supported, not only by the legal authorities cited by this court in its findings of fact and conclusions of law, but by each and every one of the authorities which are relied upon by the district court in the above-quoted passage. See *In re Lovich, supra,* at 614, to the following effect:

"We believe that the circumstances under which Boris Lovich made the statement would justify the application of this principle, [that a false statement made recklessly without any attempt to ascertain the facts and without any basis for an honest belief or truth may bar a discharge under section 14, subd. C(3), the former 'false financial statement' exception to discharge]; nevertheless it does not follow as of course that his conduct will *bar the discharge* of his employers, the bankrupts. As their authorized agent to manage the business, *fraud on his part in obtaining credit for them may be imputed to them to affect their rights and obligations with respect to the person defrauded* without necessarily affecting their privilege of a discharge under the Bankruptcy Act." (Emphasis added.)

The cases following and commenting on the *Lovich* decision, *supra,* and relied on in it have all in like manner observed that an agent's fraud may be imputed on the dischargeability issue, but not when the question is entitlement to the general discharge.[11] See also *In re Brown, supra,* at 1070–71, to the following effect:

**11.** See, e.g., *Matter of Anderson,* 29 B.R. 184, 190 (Bkrtcy.N.D.Iowa 1983), to the effect that: "Most of the early cases under the Act focused on whether the statements of one partner may be imputed to the bankrupt partner to prevent that partner's discharge in bankruptcy. These

cases generally distinguished between the bankrupt's *right* to a discharge and the *effect* of a discharge. *Frank v. Michigan Paper Co.,* 179 F. 776, 779 (4th Cir.1910). The early courts generally did not impute the fraudulent conduct of a partner to the 'innocent' bankrupt partner to

"The Bankruptcy Court concluded that Spruell was the Bankrupt's agent. As a general rule, a principal is liable to third persons for all acts done by his agent on his behalf if the agent's act is within the actual or apparent scope of his agency. 3 C.J.S. Agency § 390. Thus, if Spruell was acting as the Bankrupt's agent in soliciting Aldis' investment, and was acting within the scope of his authority, *the Bankrupt would be liable for any false representations made, or false pretenses perpetrated,* by Spruell." (Emphasis added.)

A decree of nondischargeability was accordingly entered in the *Brown* case, *supra*.[12] See also *In re Berman, supra*, at 243, to the following effect:

"On principle we think that more should be shown to justify *withholding a discharge* than that an agent made a fraudulent statement within the scope of a general authority to transact the bankrupt's business." (Emphasis added.)

And, in every other respect, the principles adumbrated in the *Berman* case, *supra*, are consonant with the result reached by this court on its initial judgment.[13] See also *In re Maloof, supra*, at 374, to the following effect:

"But the matter is controlled to the same effect by a question of law. It clearly appears that the statement was made by the bookkeeper from the books, at the request of Maloof, the husband and manager of business for Mrs. Maloof, and both the making of it and its falsity, if false, were wholly unknown to, and not specially authorized by, her. *Supposing the statement to be false, to the knowledge of Maloof, as respects the rights of Daniel Miller Company, which was deceived by it, Mrs. Maloof is bound by the acts of her agent in the transaction. Having acquired their goods, she cannot repudiate the means by which they were obtained. The debt is one for property obtained by fraud, and is not affected by a discharge in bankruptcy under section 17(b) of the Bankruptcy Act.*

"*But to deny her a discharge would be to extend the benefit to other creditors, who were not misled by the fraud,* and who have no right to redress on account of it, and thus to inflict a punishment or penalty on Mrs. Maloof. Section 17 undertakes to do justice between the bankrupt and special creditors. Section 14 (Comp.St. § 9598), relating to bar of discharges, does justice between the bankrupt and the law, and the denial of a discharge thereunder is in the nature of a penalty on the bankrupt for conduct which is supposed to show him unworthy of the grace of a discharge. The acts which bar a discharge are in general the personal acts of the bankrupt and some of them crimes, and may not be committed by the unauthorized acts of agents. "This seems to be implied in the rulings in this Circuit as to the fraudulent act of a copartner not prejudicing an innocent member of the firm as respects the latter's discharge. *Hardie v. Swafford Trust Co.*, 165 F. 588, 91 C.C.A. 426, 20 L.R.A. (N.S.) 785; *Re Cotton & Preston* (D.C.) 183 F. 181; *Ragan-Malone Co. v. Cotton & Preston*, 200 F. 546, 118 C.C.A. 640; *Franklin v. Monning Dry Goods Co.*, 217 F. 929, 133 C.C.A. 601. These cases were decided without reference to the amendment of 1910 touching false statements as a ground for refusing a

---

deny the bankrupt a discharge. See *In re Lovich*, 117 F.2d 612 (2nd Cir.1941) ... The courts did, however, ... indicate that even though the bankrupt partner would be granted the discharge, the *effect* of the discharge may be such that the bankrupt would not be discharged from liability on the debt owed to the defrauded creditor. *Frank v. Michigan Paper Co.*, 179 F. at 781, and Lovich, 117 F.2d at 614." See also *Matter of Gray*, 22 B.R. 676, 679 (Bkrtcy.W.D. Wis.1982) ("[There is] a distinction between de-

nying discharge and determining a particular debt to be nondischargeable ...").

**12.** Although the district court cited the *Brown* decision to support its result, it appears directly to contradict that result.

**13.** In that case, as in this one, a debtor endorsed each and every misrepresentation made by his wife without making even minimal inquiry into their accuracy.

discharge. That amendment made it quite clear that the false statement must be the personal act of the bankrupt himself, though it might be made to an agent of the creditor, for the amendment added the italicized words to make section 14b(3) read 'obtain money or property on credit upon a materially false statement in writing, made *by him* to any person or *his representative* for the purpose of obtaining credit,' etc. Since a corporation can act only by an agent, it may be fully bound for the moral quality of its agent's fraudulent act in obtaining credit, and a natural person should be bound by any such act directly authorized or connived at and thus adopted. But a general discharge is not forfeited by a natural person through a wholly unauthorized and unknown fraud of an agent in buying goods. *Frank v. Michigan Paper Co.*, 179 F. 776, 103 C.C.A. 268, 30 L.R.A. (N.S.) 623." (Emphasis added.)

And see *In re Schwartz and Co., supra,* at 167–168, to the following effect:

"Five statements purporting to show the financial condition of A. Schwartz & Co. were shown to have been issued in the name of the firm and to have been signed in the firm name. The bankrupt Emmanuel Schwartz denied that he had signed these statements or had authorized any one to do so. At his first examination under section 21a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 552 [U.S.Comp.St.1901, p. 3430]) before the commissioner he refused to answer any questions concerning statements or in whose handwriting they were on the ground that his answers might incriminate him. At that time his brother Samuel was living. Subsequently, after his brother's death, he testified that the statements were in his brother's handwriting, and were signed by his brother in the bankrupt's name, *without authority and without their knowledge.*

*I have no doubt from the testimony that Samuel Schwartz did sign and issue these statements, and that he did so within the scope of his authority as agent and manager for the firm.* It is unnecessary to consider the effect of these statements given to Bradstreets or other creditors, as it is in evidence that the statement (Exhibit G) was delivered directly to Lewis Frank & Sons by Emanuel Schwartz for the purpose of obtaining credit, and that his firm obtained merchandise on credit from Frank to the amount of $181.80 (page 106). This statement showed a net worth of over $28,000, according to inventory of July 15, 1910. The bankrupt admitted it to be absolutely false (page 20), and it was materially false as a matter of fact. The merchandise was overvalued. The outstanding accounts had been hypothecated, and there was no inventory taken on July 15, 1910, as there had been a fire and the goods were destroyed or badly injured.

*"The bankrupts should be held liable for the act of their agent, especially in view of the participation of the bankrupt Emanuel in the Frank transaction."* (Emphasis added.)

As the above quotations graphically demonstrate, the fraud of an authorized agent, without more, has continually been recognized as a ground of nondischargeability, although it takes the knowledge or reckless disregard of the principal to deny the latter's discharge in bankruptcy. All of the cases that this court could find which antedate the decision of the district court decision are to this effect. Further, all except one of the decisions which have since been decided so hold.[14] The one case which determined that there must be knowledge of the debtor or debtor participation in his agent's fraud to warrant a decree of nondischargeability predicates its avulsive departure from the law of nondischargeabili-

---

14. See *In re Warren,* 7 B.R. 571 (Bkrtcy.N.D.Ala. 1980); *Matter of Gray,* 22 B.R. 676, 680 (Bkrtcy. W.D.Wis.1982) (denying a motion for summary judgment by the debtor on the grounds that "the current law would seem *at a minimum* to sup-

port holding a debtor liable where he had seen the financial statement and the errors were such that he knew or should have known of their falsity." (Emphasis added.). Cf. *Matter of Anderson,* 29 B.R. 184 (Bkrtcy.N.D.Iowa 1982).

ty upon a nonexistent set of authorities. See *In re Anderson*, 29 B.R. 184, 191 (Bkrtcy.N.D.Ia.1983), which chiefly bases its refusal to impute the fraud of the agent to the principal in a dischargeability action on the following reasoning:

> "One of the primary purposes of the Bankruptcy Act is to relieve the honest debtor from the oppressive burden of his or her debts. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). It is in this light that the legislative history of the 1978 Bankruptcy Code indicates that the basis for the exceptions of discharge under § 523(a) is to protect the creditor from the dishonest and fraudulent debtor. H.R.Rep. No. 595, 95th Cong. 1st Sess. 130, 131 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787."

An examination of the last cited authority at page 5787, however, in reality discloses nothing respecting the purposes of § 523(a), and nothing which could be subject to the interpretation which it is given in the *Anderson* case, *supra*. Otherwise, the court in the *Anderson* case, *supra*, purports to rely upon the reasoning of *Matter of Gray, supra*, 22 B.R. at 680, a case which does not purport to apply the "non-imputation" rule [15] and which, further, confuses the cases which apply to denial of discharge with those which may properly apply to the nondischargeability issue.[16] "The concept of nondischargeability of a debt under section 523 is not to be confused with denial of discharge under section 727. It is entirely possible for a debtor with nondischargeable debts to receive a discharge." 4 Collier on Bankruptcy ¶ 727.01, p. 727–6, n. 5 (15th ed. 1985).

---

**15.** See note 14, *supra*.

**16.** The *Gray* case tends to confuse and dilute the common-law standard applied in the cases decided under the former Bankruptcy Act. This is done on the very spurious ground that "Section 523(a) provides for nondischargeability of particular debts, not discharge of the debtor. In this sense, it is more like section 17a. However its language is closer to that of section 14c, as it speaks in terms of the debtor's acts, not simply

Nevertheless, when the above quoted decisions of the district court was in turn appealed to the United States Court of Appeals for the Eighth Circuit, it was again briefed as if it were basically an objection to discharge. This is apparent from the decisions which were relied upon by the court of appeals in making its decision, which was to reverse the decision of the district court and remand the action to the bankruptcy court for further findings of fact. The basic legal statement issued by the court of appeals was to the effect that: "Proof that a debtor's agent obtains money by fraud does not justify the *denial of discharge* to the debtor, unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud." (Emphasis added.) Further, each and all the authorities relied upon by the court of appeals were exclusively concerned with the issue of denial of discharge. The basic reasoning applied by the court of appeals was as follows:

> "Proof that a debtor's agent obtains money by fraud does not justify the denial of a discharge to the debtor, unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud. *In re Lovich*, 117 F.2d 612, 614–15 (2d Cir.1941). If the debtor was recklessly indifferent to the acts of his agent, then the fraud may also be attributable to the debtor-principal. E.g., *David v. Annapolis Banking & Trust Co.*, 209 F.2d 343, 344 (4th Cir.1953). In the cases cited to us, the debtors were found to be recklessly indifferent because they had signed false documents without examining them. *Id.; Gardner v. American Century Mortgage Investors*, 577 F.2d

of liabilities obtained in certain ways." But, in reality, section 523(a)(2) clearly speaks in terms of *debts*, not *acts*: "A discharge ... does not discharge an individual debtor from any *debt* ... for obtaining money, property, services, or an extension, renewal or refinance of credit, by false pretenses, a false representation, or actual fraud ..." (Emphasis added.) In this material respect, it is *much* closer to former section 17a(2) than former section 14c(3).

928, 929 (5th Cir.1978); *In re Santos,* 211 F.2d 887, 889 (7th Cir.1954); *In re Savarese,* 209 F. 830, 832 (2d Cir.1913). Despite the debtors' lack of actual knowledge, the courts in those cases refused to discharge the debts because the debtors had no reason, good or bad, for their lack of knowledge. In other words, the debtors in those cases should have known of the fraud. It is clear, however, that failure to read a document prepared by one's agent before signing it is not the only kind of act which can constitute 'reckless indifference.' The debtor who abstains from all responsibility for his affairs cannot be held innocent for the fraud of his agent if, had he paid minimal attention, he would have been alerted to the fraud. See *In re Savarese,* 209 F. at 832; *David,* 209 F.2d at 344; *Matter of Walker,* 726 F.2d at 454."

Each of the authorities thus alluded to by the court of appeals was exclusively a denial of discharge case. See *David v. Annapolis Banking & Trust Co.,* 209 F.2d 343 (4th Cir.1953) ("This is an appeal from an order *denying a discharge* in bankruptcy on the ground that the bankrupt had obtained a loan from a bank as the result of making to the bank materially false statements in writing respecting her financial condition.") (Emphasis added.); *Gardner v. American Century Mortgage Investors,* 577 F.2d 928, 929 (5th Cir.1978) ("Creditors American Century Mortgage Investors and Morgen-Osgood & Associates filed proceedings seeking a denial of a discharge in bankruptcy to appellant William Gardner. The bankruptcy judge denied Gardner a discharge in bankruptcy under Section 14(c)(3) of the Bankruptcy Act, 11 U.S.C. section 32(c)(3), which provides for denial of a discharge to debtors who obtain credit through a false written statement respecting his financial condition."); *In re Santos,* 211 F.2d 887 (7th Cir.1954) ("The referee entered an order denying a discharge to the bankrupt because of a false written statement respecting his financial condition submitted for the purpose of obtaining a loan.'); *In re Savarese,* 209 F. 830, 831 (2d Cir.1913) ("This is the appeal of an objecting creditor from an order granting the bankrupt a discharge."). The court of appeals concluded that, since the bankruptcy court had applied the standard relating to nondischargeability cases, and not the above standards, the crucial material findings had not yet been made:

"Since the record evidence is subject to differing interpretations and the findings of the bankruptcy court, as indicated, are not presently acceptable as decisive of the basic issue, we believe that the district court erred in finding a want of showing that Mr. Walker knew, or should have known, of his wife's fraud. The question is one of fact to be decided in the first instance by the bankruptcy court, and we find a remand to the bankruptcy court for further findings of fact and conclusions of law is required."

■ This court, therefore, after remand of this action, conducted its evidentiary hearing in accordance with the instructions of the court of appeals. The evidence which was adduced by both of the parties in the hearing held after remand pertained only to the debtor's wife's making of the false financial statements to the Citizens State Bank of Maryville. By means of the evidence which was presented in that hearing, no other ground for denial of discharge or for a decree of nondischargeability was presented. As noted above, however, the current Bankruptcy Code contains no provision for denial of discharge on the basis of a false financial statement. Therefore, this court must deny the complaint of plaintiff insofar as it requests denial of discharge inasmuch as it is deficient as a matter of law on the proof before the court.

■ The complaint also, however, sounds, as observed above, as a request for nondischargeability. In respect of that request for relief, this court believes, for the reasons stated above, that, while the request for denial of discharge must be denied, the decree of nondischargeability should be granted. The admitted and undisputed fraud of the debtor's wife must, in accordance with the authorities and princi-

ples stated above, be imputed to the debtor and must provide a satisfactory basis for the decree of nondischargeability, for the reasons stated by this court in its initial, appealed-from judgment.[17]

▇ Even if, however, the standard of the authorities governing denial of discharge should apply, the evidence which has been presented to this court in the initial hearing and in the hearing conducted after remand demonstrates that the debtor "should have known of the fraud" within the meaning of the standard set down by the court of appeals. *Matter of Walker*, *supra*, 726 F.2d at 454. Such evidence as has been adduced shows that such business records were kept in writing which, if consulted, should have given the debtor reason to believe that advances of credit could not, without misrepresentations of the levels and inventory of the business of the debtor, been obtained.[18] The debtor was on the premises of the business with some frequency.[19] He had occasion to view the inventory and status of operations of the business.[20] And, otherwise, he was able to have frequent access to his wife.[21] Such hospitalization as he had was of but brief duration.[22] He could have, if he had inquired, learned of the one fact which kept the business going, the fact of his wife's misrepresentations. As stated by the Court of Appeals in *Matter of Walker*, *supra*, at 454, "[t]he debtor who abstains from all responsibility for his affairs cannot be held innocent for the fraud of his agent if, had he paid minimal attention, he would have been alerted to the fraud."

It is the testimonial contention of the debtor and his wife, however, that the debtor's medical condition would have been ex-acerbated by any discussion of the affairs of the business, and that, therefore, they purposely refrained from any such discussion. This court finds this testimony not to be credible. The paramount reason for this finding is the appearance and demeanor of the witnesses themselves. In this issue, the judgment of the trier of fact must be considered crucial to the decision. "The deference owed by appellate courts to finders of fact [on the issue of credibility] is at its highest where the issue turns on the resolution of a direct conflict between live witnesses." *In re Windle*, 653 F.2d 328, 331 (8th Cir.1981). Further, the evidence of the debtor's illness fails to convince that it was sufficiently grave to make it likely that any and all discussion of the conduct of the business was eschewed. And, as the court of appeals observed, "[i]n view of the wife's admitted business inexperience, some supervision undoubtedly was required and undoubtedly Walker participated to some extent." 726 F.2d at 454.

The law, therefore, and the facts require the re-entry of the decree of nondischargeability.[23]

It is therefore

ORDERED, ADJUDGED AND DECREED that defendant's indebtedness to plaintiff in the sum of $43,463.91 be, and it is hereby, declared to be nondischargeable in bankruptcy. It is further accordingly

ADJUDGED that plaintiff have and recover the same sum from defendant.

---

17. This court then stated: " 'A bankrupt who has made no false representation himself may nevertheless be bound by the fraud of an agent acting within the scope of his authority.' 1A Collier on Bankruptcy ¶ 17.16, p. 1640, 1641 (1978)."

18. See note 9, *supra*.

19. See notes 7 and 9, *supra*.

20. See note 9, *supra*.

21. They continued to live together, except for the few brief hospitalizations, throughout this period of time.

22. See note 7, *supra*.

23. The former judgment of December 14, 1982, was to the effect that it was "ORDERED, ADJUDGED AND DECREED that the defendant's liability to the plaintiff in the sum of $43,463.91 be, and it is hereby, declared to be nondischargeable in bankruptcy" and further "ADJUDGED that plaintiff have and recover the same sum of $43,463.91 from defendant."