**In re Pamela K. SMITH, Debtor.**

**Jerry L. LOVE and Lynne L. Love, Plaintiffs,**

v.

**Pamela K. SMITH, Defendant.**

**Bankruptcy No. 88–90991.**
**Adv. No. 88–9117.**

United States Bankruptcy Court, C.D. Illinois, Danville Division.

Feb. 23, 1989.

Thomas Z. Hodson, Urbana, Ill., for plaintiffs.

Arnold F. Blockman, Champagne, Ill., for defendant.

Kenneth C. Meeker, Danville, Ill., Trustee.

## OPINION

GERALD D. FINES, Bankruptcy Judge.

The matter before the Court is the plaintiffs' Complaint to Determine Dischargeability of Debt. Trial was held on January 19, 1989. Post-trial briefs were submitted by the parties and were filed with the Court by February 6, 1989.

In their Complaint, plaintiffs ask the Court to determine that the debt in the amount of $4,035.37 plus interest is non-dischargeable under § 523(a)(2)(A) of the Bankruptcy Code. The debt at issue arises out of plaintiffs' purchase of a 1986 G.M.C. conversion van from Champaign Dealer Marketing on October 30, 1986. The evidence presented at the trial revealed the following facts. At the time of the sale, Pamela K. Smith (now Pamela Perrodin) was married to Bob Smith. Bob Smith wanted to sell used automobiles, but, because of his prior felony conviction, he could not obtain a dealership license in his own name. Pamela K. Smith knew that her husband could not obtain a dealership license himself because of his criminal record, so she applied for the license in her name to do business as Champaign Dealer Marketing. She paid the necessary fee to the Secretary of State for the license. Pamela K. Smith also signed the dealer renewal application, and signed the check to pay that fee. Pamela K. Smith indicated on the dealer renewal application that no officer, director, owner, or partner has ever been convicted of a felony. Pamela K. Smith took out an insurance policy covering the dealership and the name of the insured was Pamela K. Smith, d/b/a Champaign Dealer Marketing. All checks issued by Champaign Dealer Marketing were signed by Pamela K. Smith. Pamela K. Smith testified that no one else had authority to sign checks on the Champaign Dealer Marketing Account.

Pamela K. Smith also testified that her husband, Bob Smith, operated the business of Champaign Dealer Marketing. She testified that she played no role in the management of the business and did not hire or supervise the employees. She testified that she was aware that Ted Christman (Christman) was selling used cars at Champaign Dealer Marketing.

On October 30, 1986, plaintiffs purchased the conversion van from Champaign Dealer Marketing. Christman was the salesman who sold them the van and who dealt with plaintiffs in connection with the sale of the van.

Plaintiffs purchased the van for the sum of $14,353.75. Shortly after plaintiffs took possession of the van, Michael A. Langley (Langley) and two police officers came to plaintiffs' residence and demanded possession of the van. The evidence at trial revealed that, at the time of the sale of the van to plaintiffs, Michael A. Langley was the true owner and General Motors Acceptance Corporation (GMAC) had a lien against the van. Langley had left his van with Champaign Dealer Marketing on a consignment basis to sell it at a certain price. Christman, on behalf of Champaign Dealer Marketing, sold the van to the plaintiffs without informing them that Langley was the true owner and that GMAC had a lien against the van. Christman turned the money over to Bob Smith, who did not pay the money to Langley. Rather, Bob Smith

used the money from the van to pay personal obligations.

In early December 1986, plaintiffs brought an action in state court against Langley and GMAC for replevin and title to the van, which resulted in a judgment in favor of the plaintiffs determining plaintiffs' right to possession and title, subject to GMAC's security interest. In January 1987, plaintiffs extinguished GMAC's lien by tendering GMAC the sum of $1,921.50. Plaintiffs allege that their attorney's fees incurred in their replevin action were in the amount of $1,941. On June 10, 1987, plaintiffs filed a complaint in state court against Pamela Smith, d/b/a Champaign Dealer Marketing based on the Illinois Consumer Fraud and Deceptive Business Act. That complaint was settled by stipulation and, on January 7, 1988, a judgment was entered against the defendant for damages of $3,862.50 plus reasonable attorneys fees of $1,287.50 together with costs, which totaled $45.20. Pamela K. Smith's Chapter 7 Bankruptcy petition was filed September 29, 1988.

Pamela K. Smith testified that she knew about the stipulation settling the state court complaint and that she made payments on the judgment in the amount of $1,400. According to the court's calculations, the net amount under consideration as being nondischargeable is $3,795.20.

The issue for the Court to decide is whether the amount of $3,795.20 is nondischargeable in Pamela K. Smith's Chapter 7 Bankruptcy case pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

Title 11, U.S.C. § 523(a)(2)(A) provides as follows:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt— ...

(2) for obtaining money, property or services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ..."

■ In order for the debt to be found nondischargeable under § 523(a)(2)(A),

plaintiffs must prove by clear and convincing evidence the following elements:

(1) that the debtor made the representation;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; and,

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Kimzey*, 761 F.2d 421–424 (7th Cir. 1985); *In re Bellesfield*, 41 B.R. 729, 731 (Bankr.E.D.Pa.1984); *In re Bogstad*, 779 F.2d 370, 372 (7th Cir.1985).

■ Exceptions to the discharge of a debt are strictly construed against the creditor and liberally in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); 3 Collier on Bankruptcy, para. 523.05A, at 523–15 (15th ed. 1985). Fraud under § 523(a)(2)(A) must be actual fraud rather than implied fraud and actual fraud requires proof of moral turpitude or intentional wrongdoing. Ginsberg, Bankruptcy, para. 11,304 (1988 Supp.), citing *In re Pelen*, 33 B.R. 763 (Bankr.M.D. Pa.1983), *In re Simpson*, 29 B.R. 202 (Bankr.N.D. Iowa 1983), *In re Brackin*, 23 B.R. 984 (Bankr.E.D.Pa.1982).

In defense of her dischargeability complaint, Pamela K. Smith argues that Bob Smith was not an agent of Pamela K. Smith at the time he committed the acts that gave rise to this complaint, and, therefore, those acts should not be attributed to Pamela K. Smith. Further, Pamela K. Smith argues that, even if an agency relationship is found to exist, Bob Smith's tortious conduct was committed outside the scope of his employment. Further, Pamela K. Smith argues that, even if agency is found, the actual principal is the corporation and not Pamela K. Smith, individually.

■ Agency is a legal concept which depends on the existence of the following factual elements:

"(1) the manifestation by the principal that the agent shall act for him;

(2) the agent's acceptance of the undertaking; and,

(3) the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) Agency § 220 comment d. The control or right to control needed to establish agency may be very attenuated and there may even be an understanding between the master and servant that the employer shall not exercise control. Restatement (Second) Agency § 220 comment d.

■ It is a general rule that a principal is liable to third persons for all acts done by his agent on his behalf if the agent's act is within the scope of his agency. *In re Brown,* 412 F.Supp. 1066, 1071 (W.D.Okla. 1975), citing 3 C.J.S. Agency § 390. The principal is estopped from denying the agent's apparent authority where the principal has placed the agent in a situation where the agent may be presumed to act for her. *Kalman v. Bertacchi,* 57 Ill.App. 3d 542, 15 Ill.Dec. 204, 210, 373 N.E.2d 550, 556 (1978), citing *Faber–Musser Co. v. Dee Clay Manufacturing Co.,* 291 Ill. 240, 126 N.E. 186 (1920), *Elmore v. Blume,* 31 Ill. App.3d 643, 647, 334 N.E.2d 431, 434 (1975).

■ Although the testimony indicated that Bob Smith ran the business known as Champaign Dealer Marketing and that Pamela K. Smith did not participate in any of the decision making or management of the business, she did exercise control over Bob Smith because the license was in her name. She was the only person authorized to sign checks, and she actually enabled Bob Smith to operate the business. The Court is convinced that Bob Smith was acting as Pamela K. Smith's agent at the time of the sale of the van to plaintiffs.

Many courts have found that fraud committed by an agent would render a debt nondischargeable as to a debtor-principal under § 523(a)(2). *See: In re Paolino,* 75 B.R. 641, 648 (Bankr.E.D.Penn.1987) citing 1A Collier, para. 17.16 (14th ed.), 3 Collier, para. 523.08 (15th ed.), *In re Beleau,* 35

B.R. 259 (Bankr.D.R.I.1983), *In re Lowther,* 32 B.R. 638 (Bankr.W.D.Okla.1983), *In re Shelton,* 28 B.R. 218 (Bankr.E.D.Mo. 1983); *In re Newmark,* 20 B.R. 842, 857 (Bankr.E.D.N.Y.1982); *In re Pommerer,* 10 B.R. 935 (Bankr.D.Minn.1981); *Matter of Walker,* 53 B.R. 174, 180–182 (Bankr.W. D.Mo.1985).

A debtor who has not himself made any false representation may be responsible for the fraud of an agent acting within the scope of that agent's authority. Collier on Bankruptcy, para. 523.08[4] at 523–52 (15th ed.), citing *In re Maloof,* 2 F.2d 373 (N.D. Ga.1924); *In re Pulver,* 146 Wash. 597, 264 P. 406 (1928); *National Bank of North America v. Newmark,* 20 B.R. 842 (Bankr. E.D.N.Y.1982). *See also: Matter of Walker,* 53 B.R. 174, 182 n. 17 (Bankr.W.D.Mo. 1985).

In *In re Paolino,* the Court denied a motion for summary judgment in a dischargeability complaint and found that, if plaintiffs established that the wrongdoer in that case was acting as the principal/debtor's agent at the time of the alleged fraud, then any fraud committed by the agent/wrongdoer within the scope of the agency would be imputed to the principal/debtor under § 523(a)(2)(A). At the trial in *Paolino,* an agency relationship was found and the fraud committed by the agent was held nondischargeable by the principal/debtor. *In re Paolino,* 89 B.R. 453, 459–460 and 465 (Bankr.E.D.Pa.1988).

There is a distinction in the case law addressing the liability of a principal for an agent's fraud that distinguishes between denial of a discharge and nondischargeability of a particular debt. *See: Matter of Walker,* 53 B.R. at 177–178 and n. 11. The cases indicate that an agent's fraud may be imputed to the principal on the issue of the dischargeability of a particular debt, but not when the issue is entitlement to a general discharge. *Id.* Courts have found that the fraud of an authorized agent, without more, is a ground for determining that a particular debt is nondischargeable; however, a principal's knowledge or reckless disregard of the fraud must be proven in order to deny the principal's discharge in

bankruptcy. *See: Id.* at 176–182. The complaint in this case seeks a determination of nondischargeability of a particular debt, and, therefore, the case law supports imputing the fraud committed by Pamela K. Smith's agents to her as the principal.

Resolution of this case, therefore, depends on a determination of whether Bob Smith's actions come within § 523(a)(2)(A) so as to render the debt to plaintiffs nondischargeable in Pamela K. Smith's bankruptcy case.

 Bob Smith testified that he believed at the time of the sale that he had the right to sell the van to plaintiffs. He also testified that he spent the money from the sale of the van on his personal obligations and that he agreed to the settlement of plaintiffs' complaint in state court, in which he admitted that Champaign Dealer Marketing committed consumer fraud and deceptive business practices in the sale of the van to plaintiffs.

It is the determination of this Court that the testimony at trial clearly indicates that the sale of the van to plaintiffs by Champaign Dealer Marketing comes within § 523(a)(2)(A) as money obtained by "false pretenses, a false representation, or actual fraud." Even though Bob Smith operated Champaign Dealer Marketing, his actions in authorizing the sale of the van to plaintiffs is attributable to Pamela K. Smith as the principal under the principles of Agency. The sale of the van was obviously within the scope of Bob Smith's employment by Champaign Dealer Marketing.

The only issue left for the Court to decide is the amount of the debt to plaintiffs that should be held nondischargeable in Pamela K. Smith's bankruptcy.

■ Defendant argues that the attorney's fees and expenses incurred by plaintiffs in the state court proceedings are not compensable under § 523(a)(2)(A), but does not cite any authority for this proposition. As a general rule, attorneys' fees awarded as part of a state court judgment based on state statute or contract are nondischargeable where the bankruptcy court finds that the underlying debt is itself nondischarge-

able. *In re Levinson,* 58 B.R. 831, 837–383 n. 7 (Bankr.N.D.Ill.1986). A state court Judgment Order entered January 7, 1988, awarded plaintiffs damages of $3,862.50 plus reasonable attorney's fees of $1,287.50 and costs, which were $45.20. Pamela K. Smith testified that she has made payments in the total amount of $1,400. Therefore, this Court finds that the net amount that is nondischargeable under § 523(a)(2)(A) is $3,795.20.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.